# EXHIBIT A

**22SL-CC02393**

Electronically Filed - St Louis County - May 01, 2022 - 02:45 PM

**IN THE CIRCUIT COURT FOR ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | |
|---|---|
| MICHAEL MULLER, *individually and on behalf of all others similarly situated,* <br><br> Plaintiffs, <br><br> v. <br><br> GLAXOSMITHKLINE CONSUMER HEALTHCARE HOLDINGS (US) LLC, DOES 1 through 10, <br><br> Defendants. | Case No. _____ <br><br> **JURY TRIAL DEMANDED** |

<u>**CLASS ACTION PETITION**</u>

Plaintiff Michael Muller, individually and on behalf of all others similarly situated, hereby files this, Class Action Petition, against Defendant GlaxoSmithKline Consumer Healthcare Holdings (US) LLC ("GKS") and DOES 1 through 10 (collectively "Defendants") for their false, misleading, and deceptive marketing of their products constituting breach of warranty, breach of implied contract, and unjust enrichment, and, in the state of Missouri, violations of the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA").

## I.     <u>INTRODUCTION</u>

1.     Defendant GKS markets and sells consumer health products, including a variety of cough medicines marketed under the brand name "Robittusin."   Specifically, GKS markets and sells Robittusin's cough suppressants containing dextromethorphan ("DXM") – a substance scientifically proven to cause drowsiness – that are nonetheless marketed and falsely claimed to be "Non-drowsy."

2.     In other words, all of the Products are deceptively, misleadingly, and dangerously marketed as being "Non drowsy," despite containing DXM, which is widely acknowledged by medical experts to *cause* drowsiness. Robitussin's DXM-containing, falsely-labeled "Non Drowsy" cough

1

Electronically Filed - St Louis County - May 01, 2022 - 02:45 PM

suppressants ("Products") are therefore sold in violation of Missouri law.

3.  Shockingly, GSK is already well-aware that DXM causes drowsiness, and well-aware that the "Non drowsy" claims that its American-sold Products make are false.  In the United Kingdom, for instance (where GSK's parent company is headquartered), GSK is prohibited from making the "Non drowsy" claim on all of its DXM products, and does not do so. Instead, GSK labels *only* its non-DXM-containing suppressants as "Non drowsy," and warns its United Kingdom customers that the DXM-containing products cause, *inter alia,* "drowsiness, [and] dizziness."[1]  Here, dangerously, Missouri consumers are told by GSK, a "health and wellness" company, that a product which *causes* drowsiness is, in fact, "Non drowsy."

4.  In addition to GSK's demonstrated knowledge of the falsity of the Products' "Non drowsy" claim, the "Non drowsy" claim for DXM is contradicted by medical experts and authoritative medical literature, as discussed further *infra*.  In short, GSK itself admits what all of the science indicates: DXM causes drowsiness; the Products' "Non drowsy" claims are patently false.

5.  Nonetheless, GSK uses the false and misleading "Non-drowsy" claim to portray its Products as more valuable to buying consumers.  The vast majority of consumers do not want to experience drowsiness or risk drowsiness during the day. Indeed, in addition to being inconvenient, unexpected drowsiness could be extremely dangerous in a variety of circumstances.  Nonetheless, knowing consumers prefer *actual* "Non Drowsy" products, GSK created the false and misleading "Non drowsy" claim to portray the Products as having a unique and positive quality that differentiates them from competitor products.

6.  Pursuant to the MMPA, such practice is illegal.

7.  In addition, and/or in the alternative to the above, since the initial offering of the Products, each and every container of the Products has borne a uniformly-worded label falsely claiming

---

[1] https://www.gskhealthpartner.com/en-gb/respiratory-health/brands/robitussin/products/cough-range/

Electronically Filed - St Louis County - May 01, 2022 - 02:45 PM

the Product is "Non drowsy." That uniformly-worded false statement gives rise to additional and/or alternative claims under Missouri law.

## II.     PARTIES, JURISDICTION, AND VENUE

8.      Plaintiff Michael Muller is a citizen and resident of St. Louis County, Missouri.

9.      Plaintiff brings this Class Action Petition individually and on behalf of a putative class of Missouri citizens, and only Missouri citizens.

10.     Defendant GlaxoSmithKline Consumer Healthcare Holdings (US) LLC is a Delaware limited liability corporation with its principal address at 184 Liberty Corner Road, Warren NJ 07059.

11.     Defendant GSK, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of Missouri. GSK is the owner, manufacturer, and distributor of the Products, and is the company that created and/or authorized the false, misleading, and deceptive packaging of the Products.

12.     The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. If necessary, Plaintiff will seek leave of Court to amend the Petition to reflect the true names and capacities of the DOE Defendants when such identities become known.

13.     Venue is proper in this Court because Plaintiff was injured in this venue and lives within this venue.

14.     This asserted class action comports with Missouri Supreme Court Rule 52.08 and with R.S.Mo. § 407.025(3) of the MMPA. Plaintiffs' identities can be ascertained from Defendant's records, but are so numerous that simple joinder of all individuals is impracticable. This action raises questions of law and fact common among Plaintiffs. The claims of lead Plaintiff is typical of all Plaintiffs' claims. Named Plaintiff will fairly and adequately protect all Plaintiffs' interests, and is represented by attorneys

3

Electronically Filed - St Louis County - May 01, 2022 - 02:45 PM

qualified to pursue this action. More specifically:

15.     <u>Class definitions</u>:  Plaintiff Michael Muller brings this action on behalf of himself and a class of similarly-situated Missouri citizens preliminarily-[2]defined as follows: All Missouri citizens who purchased the Products[3] during the Class Period in Missouri.  The Class Period begins five years prior to the date of the filing of this Petition, and ceases upon the date of the filing of this Petition.  Excluded from the Class and Subclass are: (a) any judges presiding over this action and members of their staffs and families; (b) the Defendants and their subsidiaries, parents, successors, and predecessors; any entity in which the Defendants or their parents have a controlling interest; and the Defendants' current or former officers and directors; (c) employees (i) who have or had a managerial responsibility on behalf of the organization, (ii) whose act or omission in connection with this matter may be imputed to the organization for liability purposes, or (iii) whose statements may constitute an admission on the part of the Defendants; (d) persons who properly execute and file a timely request for exclusion from the class; (e) the attorneys working on the Plaintiffs' claims; (f) the legal representatives, successors, or assigns of any such excluded persons; and (g) any individual who assisted or supported the wrongful acts delineated herein.

16.     <u>Numerosity</u>:  Upon information and belief, the Class and Subclass includes thousands of individuals on a statewide basis, making their individual joinder impracticable.  Although the exact number of Class members and their addresses are presently unknown to Plaintiff, they are ascertainable from Defendants' records.

17.     <u>Typicality</u>: Plaintiff's claims are typical of those of the Class because all Plaintiffs were injured by the Defendants' uniform wrongful conduct, specifically, using misleading and deceptive marketing and advertising in offering and selling the Products to Plaintiffs.

---

[2] Plaintiff reserves the right to propose, as needed, any different or other more- or less-specific class, classes, subclass, or subclasses as Plaintiff deems appropriate for purposes of class certification.

[3] As that term and label is defined herein.

Electronically Filed - St Louis County - May 01, 2022 - 02:45 PM

18.     <u>Adequacy</u>:  Plaintiff Muller is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent and experienced counsel, and he intends to prosecute this action vigorously.  The interests of the Class will be protected fairly and adequately by Plaintiff and his counsel.

19.     <u>Commonality</u>:  Common questions of law and fact exist as to all Class members and predominate over any questions affecting only individual members, such as: (a) whether the Defendant used deceptive or misleading marketing and advertising in selling the Products; (b) whether and to what extent the Class members were injured by Defendant's illegal conduct; (c) whether the Class members are entitled to compensatory damages; (d) whether the Class members are entitled to declaratory relief; and (e) whether the Class members are entitled to injunctive relief.

20.     <u>Superiority</u>:  This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy.  The damages suffered by the individual Class members will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by the Defendant's wrongful conduct.  Thus, it would be extremely difficult for the individual Class members to obtain effective relief.  A class action presents far fewer management difficulties and provides the benefits of a single adjudication, including economies of time, effort, and expense, and uniformity of decisions.

### III.    <u>BACKGROUND</u>

21.     Defendant GSK manufactures, distributes, and/or sells the "Products" – Robitussin-branded cough suppressants containing DXM and falsely labeled as being "Non drowsy." "Products," as used herein, includes the following lines (of any flavor):

      a.  Robitussin Maximum Strength Elderberry Cough + Chest Congestion DM (containing DXM and Guaifenesin);

      b.  Robitussin Maximum Strength Honey Cough + Chest Congestion DM

(containing DXM and Guaifenesin)

c.  Robitussin Maximum Strength Cough and Chest Congestion DM (containing DXM and Guaifenesin)

d.  Robitussin Maximum Strength DM Day/Night Value pack (two containers, one for day time containing DXM and Guaifenesin and one for nighttime containing DXM and Doxylamine Succinate);

e.  Robitussin Maximum Strength Cough & Chest Congestion DM Capsules (containing DXM and Guaifenesin);

f.  Robitussin Cough + Chest Congestion DM (containing DXM and Guaifenesin);

g.  Robitussin Severe Cough + Sore Throat (containing DXM and acetaminophen);

h.  Robitussin Severe Multi-Symptom Cough Cold + Flu (containing DXM)

i.  Robitussin Sugar-Free Cough + Chest Congestion DM (containing DXM and Guaifenesin);

j.  Robitussin Children's Cough & Chest Congestion DM (containing DXM);

k.  Robitussin Children's Honey Cough & Chest Congestion DM (containing DXM);

l.  Robitussin Children's Elderberry Cough + Chest Congestion DM (containing DXM);

m.  Robitussin Children's Cough & Cold CF (containing DXM);

n.  Robitussin Children's Day/Night Value pack (two containers, both containing DXM, one claiming to be "non drowsy");

(collectively, the "Products").

6

Electronically Filed - St Louis County - May 01, 2022 - 02:45 PM

22.     Examples of the Products' packaging are as follows:



a.

23.     As shown, the outside packaging for the Products, regardless of exact formula or color of packaging, uniformly claims the Products are "Non-Drowsy" (magnified label examples):



a.

b.

24.     The "Non Drowsy" claim, for the majority of the Products, is also then repeated on the label of a bottle within the Products' exterior packaging, *e.g.*:



a.

7

Electronically Filed - St Louis County - May 01, 2022 - 02:45 PM

25.     In addition to claiming to be "Non Drowsy" on both the inside and outside packaging, the "Drug Facts" labels on the back and sides of the Products provide no indication whatsoever that the Products could cause drowsiness:



26.     In short, the Products are misleadingly and falsely labeled as being "Non Drowsy," while providing no information for a consumer to determine otherwise.

### *DXM Causes Drowsiness*

27.     Multiple authoritative sources have recognized that DXM causes drowsiness.

28.     For instance, the United States' National Institute of Health ("NIH"), through a service of the National Library of Medicine, MedlinePlus, warns that DXM causes drowsiness.[4]

29.     In fact, on the MedlinePlus source page for "Dextromethorphan" – which specifically lists many of the Products herein under "Brand names of combination products" – in addition to warning of drowsiness caused by DXM, the NIH explains that DXM is an "antitussive … [that] works by decreasing activity in the part of the brain that causes coughing."[5]  In addition to the NIH, other federal governmental organizations recognize the dangers of DXM-caused drowsiness, as the US Federal

---

[4] https://medlineplus.gov/druginfo/meds/a682492.html (last visited April 22, 2022).
[5] *Id.*

Electronically Filed - St Louis County - May 01, 2022 - 02:45 PM

Aviation Authority ("FAA") advises pilots that they cannot fly while taking products with DXM.[6] Indeed, the FAA advises that, if a pilot ingests cough medications "containing [DXM], [they] should not fly for at least 5 half-lives after the last dose," which is a *minimum* of <u>thirty hours</u> according to the dosage rate.  In other words, the concern over drowsiness from DXM is so great that pilots must wait at least 30 hours after their last dose of DXM before they should pilot an airplane. *Id.*

30.      Scientific journals and books also consistently list DXM as causing drowsiness.  For instance, in the "Cough, Cold and Allergy" chapter of <u>Applied Pharmacology</u> (2011), discussion of DXM specifically lists its side effects as being "Drowsiness" and "Dizziness."[7] In the same vein, in the "Dextromethorphan" Chapter of <u>xPharm: The Comprehensive Pharmacology Reference,</u> the authors state that "[a]dverse effects produced by dextromethorphan include *drowsiness,* fatigue, [and] dizziness."[8]

31.      Various other authoritative medical sources agree. For example, the Mayo Clinic – a well-known nonprofit American academic medical center focused on integrated health care, education, and research – lists "drowsiness (mild)" as one side effect of DXM, and lists "drowsiness or dizziness" under "side effects occur[ing]" from oral DXM.[9]  Similarly, WedMD – a popular online data-compilation source – lists "slight drowsiness" as something that may occur from DXM usage, but also acknowledges that "some people may experience *severe* drowsiness/dizziness with *normal* doses."[10]

32.      This popular and widely-held consensus was echoed in another study on an alternative to

---

[6] https://www.faa.gov/licenses_certificates/medical_certification/media/OTCMedicationsforPilots.pdf (implementing the FAA's prohibition in 14 CFR sec. 61.53(a)(2) and (b) on flying while having a medical condition or taking medication that would impair the pilot).

[7] <u>Applied Pharmacology</u>, (2011) Chapter 12: Cough, Cold and Allergy*, Stan K. Bard (Pharm), Jason E. Waechter (MD), Douglas Martin (PhD),* pp. 127-129.

[8] <u>xPharm: The Comprehensive Pharmacology Reference,</u> (2007), Chapter "Dextromethorphan," Introduction, pp. 1-7.

[9] https://www.mayoclinic.org/drugs-supplements/dextromethorphan-oral-route/side-effects/DRG-20068661 (last visited April 20, 2022).

[10] https://www.webmd.com/drugs/2/drug-363/dextromethorphan-hbr-oral/details  (last visited April 20, 2022)(emphasis added).

Electronically Filed - St Louis County - May 01, 2022 - 02:45 PM

DXM, in which the authors noted that "daytime drowsiness is one of the drawbacks of the centrally acting antitussives [DXM and dihydrocodeine]," and specifically noted the alternative they were comparing to DXM showed "less sedative effects" than DXM.[11]   Similarly, in another study of an alternative to DXM, levodroproprizine, the researchers found that DXM caused drowsiness in over 10% of the patients taking DXM orally.[12]

33.     The conclusion that can be drawn from the above is obvious: consumers purchasing and using any of the Products may very likely suffer drowsiness.  This could potentially be disastrous for consumers in certain situations, such as those driving, operating heavy machinery, or supervising children and/or important/dangerous operations.  Thus, in addition to being illegal under Missouri law for being deceptive, misleading, unfair and false, GSK's false claims also are dangerous.  A significant portion of consumers will be rendered drowsy by the Products and those consumers are unable to determine on their own if that will happen or not.

34.     In addition to the above, as mentioned *supra,* GSK must be well-aware that drowsiness is a material side effect of DXM because, in the United Kingdom, GSK does not claim that its Robitussin product containing DXM are "Non-Drowsy."  For instance, its "Dry Cough" medicine contains DXM and is conspicuously *not* labeled to be "Non-Drowsy."

---

[11] Surinder Birring, et al. *Antitussive therapy: A role for levodropropizine,* Pulmonary Pharmacology & Therapeutics 56 (2019)(examining alternative to DXM with less sedative effects).
[12] Ernesto Catena, Luisa Daffonchio, *Efficacy and tolerability of levodropropizine in adult patients with non-productive cough. Comparison with dextromethorphan,* Pulmonary Pharmocology & Therapeutics 10 (1997).

Electronically Filed - St Louis County - May 01, 2022 - 02:45 PM



a. [13]

35.     On the other hand, GSK's UK products that do *not* contain DXM – for instance, "Mucus Cough and Congestion Relief" and "Chesty Cough" – are conspicuously labeled as "Non-Drowsy":

 

a. [14]

36.     Clearly, for its United Kingdom customers, at least, the only products that GKS claims

---

[13] https://www.gskhealthpartner.com/en-gb/respiratory-health/brands/robitussin/products/cough-range/
[14] *Id.*

Electronically Filed - St Louis County - May 01, 2022 - 02:45 PM

are "Non drowsy" are those specifically *not* containing DXM.  For those products containing DXM, as illustrated *supra,* GKS admits to its UK customers that drowsiness is a side effect and that the medicine "can impair cognitive function and can affect a patient's ability to drive safely."[15]  In fact, the "patient leaflet" for Robitussin with DXM required by the UK Medicines and Healthcare Products Regulatory Agency ("MHRA"),[16] also states as follows (page 2 of "Leaflet"):

> **Driving and using machines**
> The medicine can affect your ability to drive as it may make you sleepy or dizzy.
> -       Do not drive while taking this medicine until you know how it affects you.
> -       It may be an offence to drive when taking this medicine.

37.     GKS knows that the "Non Drowsy" label is a hot selling point and that customers especially want to avoid medicine that could impair their ability to drive.  That being the case, GKS's admissions to its UK customers that their DXM product has these unwanted effects is not accidental.  Rather, these presumably begrudging disclosures are strong evidence of GKS's knowledge that the Products are not truly "Non drowsy."

38.     Indeed, the gravity of GKS's false statements is further underscored by the fact that, as noted *supra,* the United States FAA recommends that pilots wait at least *thirty hours* from their last dosage of DXM before piloting an airplane.  In the UK, customers are warned that they should not drive after dosing with DXM, and the FAA does not allow pilots to fly for thirty hours afterward.  Nonetheless, for its United States customers, including those in Missouri, GKS apparently has no qualms about falsely claiming the DXM-containing products are "Non drowsy."

39.     Significantly, GKS's UK formulation – which requires the drowsiness warnings – contains 15mg of the active ingredient DXM per dose, whereas the US formulations contain 20mg.

---

[15] *Id.*
[16] Available at:  https://products.mhra.gov.uk/search/?search=robitussin&page=1

12

Electronically Filed - St Louis County - May 01, 2022 - 02:45 PM

Despite containing 33% *more* DXM per does, the US formulation claims to be "Non drowsy."  GKS makes its false claims while knowing them to be false.[17]

40.     Reasonable consumers do not expect a product prominently labeled as "Non Drowsy" to cause drowsiness. The Products' labels are deceptive and misleading in violation of the Missouri Merchandising Practice Act, and various other Missouri laws.

41.     Reasonable consumers such as Plaintiff do not have specialized knowledge necessary to identify ingredients in the Products (such as DXM) as being inconsistent with Defendant's advertised claim of being "Non Drowsy."

42.     Defendant knows that consumers are willing to pay more medicines that are labeled "Non drowsy" because they perceive it to be a better alternative to similar products that may cause drowsiness, and GKS advertises and sells the Products with the intention that consumers rely on the representation made on the front of the Products' packaging.

43.     Plaintiff and other consumers purchased the Products due to their belief that the Products would not cause drowsiness, and could live up the "Non drowsy" claim.

44.     Plaintiff and the Class made their purchasing decisions in reliance upon Defendant's advertised claims that that Products are "Non drowsy."

45.     Plaintiff and the Class reasonably and detrimentally relied upon the Products' front labels indicating that the Products are "Non drowsy."

46.     Plaintiff and the Class would not have purchased the Products had they known that the Products caused drowsiness, contrary to their claims.

---

[17] Further exacerbating the deleterious drowsiness-inducing DXM effect is the fact that 9% of the population have been shown to be "poor metabolizers" of DXM, which could cause DXM to build up even more-heavily in their circulatory system.  Per their DXM metabolic rate (median half-life is 19.1 hours, with an oral bioavailability of 80%), a "poor metabolizer" following package directives of dosing up to six (6) times per da could have as much as 120mg of DXM built up and poorly clearing their system.

Electronically Filed - St Louis County - May 01, 2022 - 02:45 PM

47.    Defendant's conduct threatens Missouri consumers by using false, deceptive, and misleading labels. Defendant's conduct also threatens other companies, large and small, who "play by the rules." Defendant's conduct stifles competition, has a negative impact on the marketplace, and reduces consumer choice.

48.    There is no practical reason for the false or misleading labeling and advertising of the Products, other than to mislead consumers as to the actual effects of the Products being purchased by consumers while simultaneously providing Defendant with a financial windfall.

### Allegations Relating to All Plaintiffs

49.    As noted, *supra,* since the initial offering of the Products, the containers on the front packaging, and the inside bottles, of all of the Products has borne one or more uniformly-worded labels falsely claiming the Product is "Non drowsy" (hereinafter "False Claims").

50.    In reality, for all the reasons set forth *supra,* a reasonable consumer would find that the False Claims are false, misleading, unfair, and/or deceptive.

51.    Defendant, as developer, manufacturer, and exclusive seller and distributor of the Products, has been aware since the Products' inception, that the False Claims are in fact false.

52.    Indeed, Defendant undoubtedly did its own investigation of the Products and its marketplace prior to it being offered for sale and, of necessity, such investigation would have made Defendant aware that the False Claims are in fact false.

53.    Despite this, Defendants purposely made the False Claims in order to induce the false belief in consumers that they were purchasing a product that was indeed "Non drowsy."

54.    Plaintiff and the class members purchased the Products without being aware that the Products are not, in fact, "Non drowsy."

55.    Defendant possessed specialized knowledge regarding the data and information concerning the formula of the Products and its clams.

Electronically Filed - St Louis County - May 01, 2022 - 02:45 PM

56.     In fact, in regard to the False Claims, the Product is a credence good because its purported "Non Drowsy" label cannot be independently verified by the consumer at the time of purchase.

57.     In purchasing the Products, Plaintiff and the class members had no choice but to necessarily and justifiably rely upon the False Claims as accurate.

58.     Had Plaintiffs known that the False Claims were false, Plaintiffs would not have purchased the Products or would not have paid as much for the Products.

59.     If, at some point in the future, the Product was improved to actually be "Non drowsy" Plaintiffs might then purchase the Products again.

60.     As the direct and proximate result of the False Claims, Plaintiff and the class members have suffered economic injury by being deprived of the benefit of the bargain they were promised by Defendant.

61.     By marketing, selling and distributing the Product to purchasers in Missouri, Defendant made actionable statements that the Products were "Non drowsy," but at all times failed to disclose that the Products caused drowsiness.

62.     Defendant engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and/or misleading, and with the intent that consumers rely upon such concealment, suppression and omissions.

63.     Alternatively, Defendant was reckless in not knowing that the False Claims were false and misleading at the time they were made.

64.     As the distributor, marketer, producer, manufacturer, and seller of the Products, Defendant possessed specialized knowledge regarding the data and information concerning the chemical formula of the Products which the Plaintiff and the class members could not and did not review.

65.     All of Plaintiffs' claims are based on misleading statements that violate FDA regulations.

Electronically Filed - St Louis County - May 01, 2022 - 02:45 PM

Such claims do not seek to impose any additional or different obligations beyond those already required by such FDA regulations.

66.     In fact, neither the FDCA, nor the regulations promulgated thereunder address whether a "non drowsy" claim is proper in connection with cough suppressants with DXM.  Unlike the UK drug regulator, the FDA has not yet required a drowsiness warning for DXM.  Likewise, the FDA has never approved a "non drowsy" claim. Consequently, none of Plaintiffs' claims in this action are preempted by the FDCA or any regulation promulgated thereunder.

*Facts Particular to Plaintiff Michael Muller*

67.     In or around April of 2022, Plaintiff purchased one of the Products from a third-party retailer while in Missouri.  Specifically, Plaintiff purchased Cough + Chest Congestion DM:



68.     Due to the claims on the packaging, Plaintiff falsely believed he was purchasing a product that had a "Non drowsy" formula, and would not cause drowsiness.

69.     Plaintiff thereafter purchased the Product.  He purchased the Product primarily for his personal, family and household use.

70.     At the time he purchased the Product, Plaintiff was unaware of the falsity of the Products' claims.

Electronically Filed - St Louis County - May 01, 2022 - 02:45 PM

71.     He discovered that such claims were false shortly after purchasing and using the Product in April.

72.     If Plaintiff had been aware of the falsity and misleading nature of Defendant's claims regarding the Product, he would not have bought the Product.

73.     When Plaintiff purchased the Product, he was injured by Defendant's illegally deceptive, false, and misleading conduct in marketing and selling the Product.

74.     Specifically, Plaintiff suffered an ascertainable loss because he did not receive the expected benefit of his bargain.

75.     When Plaintiff was purchasing the Product, due to the false claims upon the Product, Plaintiff believed that he was receiving a product with a formula that was, in fact, "Non drowsy."  The Product did not do what Plaintiff bargained for, however..

76.     The Product was not what it was purported to be.  Plaintiff did not receive the value of what he bargained for; instead Plaintiff received a product that did not live up to one of its most-prominently advertised benefit.

77.     Consequently, Plaintiff was damaged in the amount of the difference between the cost paid for the Product as represented – as one that was "Non drowsy," and the actual value of the products.  Said difference for most Plaintiffs would therefore be a percentage of the price paid for the Product.

78.     Although the aforementioned facts apply to named Plaintiff, for purposes of the proposed Class, all that is relevant is that Plaintiff and the class members, Missouri citizens, each and all purchased the Products at a time within the Class Period while in Missouri.

Electronically Filed - St Louis County - May 01, 2022 - 02:45 PM

## CAUSES OF ACTION

## COUNTS RELATING TO THE MISSOURI CLASS

## COUNT ONE: BREACH OF WARRANTY UNDER MISSOURI LAW

79.     Plaintiff hereby incorporates by reference and re-alleges each allegation set forth in each preceding paragraph of this Class Action Petition.

80.     Defendant sold the Product in its regular course of business.  Plaintiff and the class members purchased the Product.

81.     Defendant made promises and representations in an express warranty provided to all consumers, namely the False Claims.

82.     The False Claims became the basis of the bargain between the Defendant and Plaintiff and each class member.

83.     Defendant gave these express warranties to Plaintiff and each class member in written form on the labels of the Product.

84.     Defendant's written affirmations of fact, promises, and/or descriptions as alleged are each a written warranty under Missouri law.

85.     Defendant breached the warranty because the False Claims were false – the Product was not "Non drowsy."

86.     The False Claims were false when the sales took place and were undiscoverable to Plaintiff and the class members at the time of purchase.

87.     All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by or on behalf of Plaintiff and the class in terms of paying for the Product.

88.     Defendant had actual notice of the false labeling information and to date has taken no action to remedy its breach of express and implied warranty.

Electronically Filed - St Louis County - May 01, 2022 - 02:45 PM

89.     Specifically, on April 23, 2022, counsel for Plaintiff mailed to Defendant written NOTICE of Defendant's breach of express warranty to Defendant.  Defendant has not meaningfully responded, and has taken no action to remedy its breach of express and implied warranty.

90.     In addition, Defendant previously knew or should have known of the falsity of the False Claims on the Product due to, *inter alia,* Defendant's testing and knowledge of the Product.

91.     Defendant has nonetheless refused to remedy such breaches.

92.     By placing the Product in the stream of commerce, and by operation of law and the facts alleged herein, Defendants also impliedly warrantied to Plaintiff and the class members that the Products were accurately labeled in conformance with the law.

93.     Defendant's breaches of warranty have caused Plaintiffs and class members to suffer injuries, paying for falsely labeled products, and entering into transactions they otherwise would not have entered into for the consideration paid.  As a direct and proximate result of Defendant's breaches of warranty, Plaintiff and class members have suffered damages and continue to suffer damages.

94.     As a result of Defendant's breach of these warranties, Plaintiff and class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relied as deemed appropriate, in an amount sufficient to compensate them for not receiving the benefit of their bargain.

## COUNT TWO: BREACH OF IMPLIED CONTRACT UNDER MISSOURI LAW

95.     Plaintiff repeats and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

96.     By operation of law, there existed an implied contract for the sale of the Product between Defendant and Plaintiff and each class member who purchased the Product.

97.     By operation of Missouri law, there existed an implied duty of good faith and fair dealing in each such contract.

Electronically Filed - St Louis County - May 01, 2022 - 02:45 PM

98.     By the acts alleged herein, Defendant has violated that duty of good faith and fair dealing, thereby breaching the implied contract between Defendant and each class member.

99.     As a result of that breach, Plaintiff and each class member suffered damages.

## COUNT THREE: UNJUST ENRICHMENT UNDER MISSOURI LAW

100.    Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

101.    Plaintiffs plead their claim for relief in the alternative to the contract claims set forth above.

102.    Plaintiff and the class members have conferred substantial benefits on Defendant by purchasing the Product, and Defendant has knowingly and willfully accepted and enjoyed those benefits.

103.    Defendant either knew or should have known that the payments rendered by Plaintiff and the class members were given and received with the expectation that the Product would be as represented and warranted.  For Defendant to retain the benefit of the payments under these circumstances is inequitable.

104.    Through deliberate misrepresentations or omissions in connection with the advertising, marketing, promotion, and sale of the Products, including the False Claims, Defendant reaped benefits, which result in Defendant wrongfully receiving profits.

105.    Equity demands disgorgement of Defendant's ill-gotten gains.  Defendant will be unjustly enriched unless Defendant is ordered to disgorge the unjustly obtained portion of profits for the benefit of Plaintiff and the class members.

106.    As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiffs and the class members are entitled to restitution from Defendant and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendant through this inequitable conduct.

Electronically Filed - St Louis County - May 01, 2022 - 02:45 PM

**COUNT FOUR: VIOLATION OF THE MMPA – Misleading, False, and Deceptive Marketing**

107.    Plaintiff hereby incorporates by reference and re-alleges each allegation set forth in each preceding paragraph of this Class Action Petition, as though fully set forth herein.

108.    Defendant's acts complained of herein occurred in and emanated from the State of Missouri.

109.    Plaintiff and all members of the Class are "persons" and the Products are "merchandise" as those terms are defined under the MMPA.

110.    As set out in this Petition, Defendant's marketing of the Product constitutes deception, false pretense, misrepresentation, unfair practice, or, at a minimum, the concealment, suppression, or omission of a material fact in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA").

111.    As a result of Defendant's actions, consumers, including Plaintiff, were misled or deceived that the Product they were purchasing was one with a "Non drowsy" formula.

112.    Defendant's deceptive acts caused Plaintiff and the Class Members an ascertainable loss within the meaning of the MMPA.

113.    Due to Defendant's illegal conduct, Plaintiffs are entitled to restitution of all funds improperly obtained by Defendants.

114.    Plaintiffs have been forced to hire attorneys to enforce their rights under the MMPA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for an order certifying this action as a Missouri class action and appointing Plaintiff Michaael Muller as Class representative and his counsel as class counsel.  Plaintiff requests that this court find that the Defendant is liable pursuant to the aforementioned Missouri common law claims; and/or violated the MMPA, and award Plaintiffs compensatory damages, restitution, and attorneys' fees, and such further relief as the Court deems just, including injunctive

Electronically Filed - St Louis County - May 01, 2022 - 02:45 PM

relief. Although aggregate damages derived from just a percentage of the Product cost certainly will not exceed five million dollars ($5,000,000.00), nonetheless **PLAINTIFF, ON BEHALF OF HIMSELF AND THE PURPORTED CLASS, HEREBY DISCLAIMS AND/OR ABANDONS ANY AND ALL RECOVERY EXCEEDING FIVE MILLION DOLLARS ($5,000,000.00).**  **Plaintiff and his counsel further stipulate as set forth in <u>Exhibit A</u>, hereto.**

<div style="margin-left:50%">

Respectfully submitted,

**DANIEL F. HARVATH, ESQ.**

By: <u>*/s/ Daniel F. Harvath*</u>
Daniel F. Harvath, #57599MO
**Harvath Law Group, LLC**
75 W. Lockwood, Suite #1
Webster Groves, MO 63119
(314) 550-3717
dharvath@harvathlawgroup.com
*Attorney for Plaintiff*

</div>

**22SL-CC02393**

Electronically Filed - St Louis County - May 01, 2022 - 02:45 PM

**IN THE CIRCUIT COURT FOR ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| **MICHAEL MULLER,** | ) | |
| *individually and on behalf of* | ) | **Case No. _____** |
| *all others similarly situated,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **v.** | ) | |
| | ) | |
| **GLAXOSMITHKLINE CONSUMER** | ) | |
| **HEALTHCARE HOLDINGS (US) LLC,** | ) | |
| **DOES 1 through 10,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF AND COUNSEL'S STIPULATION REGARDING**
**RECOVERABLE DAMAGES**

Plaintiff, Michael Muller, individually through counsel, and Plaintiff's counsel, Daniel Harvath, as

counsel in this lawsuit ("Action"), hereby jointly stipulate and affirm the following:

- Plaintiffs will not recover, and completely disclaim recovery of, any combination of damages
  and/or attorneys' fees related to this Action meeting or exceeding $5,000,000.00;

- If Plaintiff, Brendan Abbott, is replaced as named representative in this Action, Plaintiffs'
  counsel stipulates and affirms and covenants that any and all potential class representatives for
  this Action must similarly stipulate and affirm the above limitation of recovery;

- Plaintiff and counsel intend for this Stipulation to continue to apply to, and bind, any other class
  members bringing any claim in this specific Action.

For Plaintiff and Plaintiff's Counsel:

By: /s/ Daniel F. Harvath
Daniel F. Harvath, #57599MO
**HARVATH LAW GROUP, LLC**
75 W. Lockwood, Suite #1
Webster Groves, MO 63119
(314) 550-3717
dharvath@harvathlawgroup.com

1