UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL MULLER, *individually and on behalf of all others similarly situated*, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Case No. 4:22CV670 HEA |
| GLAXOSMITHKLINE CONSUMER HEALTHCARE HOLDINGS (US) LLC, et al., | ) ) ) ) ) |
| Defendants. | ) |

## OPINION, MEMORANDUM AND ORDER

Plaintiff has filed a Motion to Remand Case to State Court [Doc. No. 14]. Defendant GlaxoSmithKline Consumer Healthcare Holdings US LLC (GSK) has filed a response in opposition [Doc. No. 14]. The motion is fully briefed and ready for disposition. For the reasons set forth below, Plaintiff's Motion will be denied.

### Background

On May 1, 2022, Plaintiff Michael Muller filed this putative class action proceeding against Defendants in the Circuit Court of St. Louis County, Missouri, alleging breach of warranty, breach of implied contract, unjust enrichment, and violations of the Missouri Merchandising Practices Act ("MMPA"). Plaintiff asserts that Defendants sold a variety of "Robittusin" cough medicines, falsely

claiming the medicine was non-drowsy, even though Robittusin's cough suppressants contain dextromethorphan, a substance scientifically proven to cause drowsiness. Plaintiff seeks compensatory damages, restitution, attorney's fees, and "such further relief as the Court deems just, including injunctive relief" on behalf of a putative class of "thousands" of Missouri citizens who purchased Robittusin products over a five-year period in Missouri. Plaintiff also included the following stipulation in his Petition:

> Although aggregate damages derived from a percentage of the Product will not exceed five million dollars ($5,000,000.00), nonetheless **PLAINTIFF, ON BEHALF OF HIMSELF AND THE PURPORTED CLASS, HEREBY DISCLAIMS AND/OR ABANDONS ANY AND ALL RECOVERY EXCEEDING FIVE MILLION DOLLARS ($5,000,000.00). Plaintiff and his counsel further stipulate as set forth in Exhibit A, hereto.**

> The attached Exhibit A further stated:

> Plaintiff, Michael Muller, individually through counsel, and Plaintiff's counsel, Daniel Harvath, as counsel in this lawsuit ("Action"), hereby jointly stipulate and affirm the following:
> - Plaintiffs will not recover, and completely disclaim recovery of, any combination of damages and/or attorneys' fees related to this Action meeting or exceeding $5,000,000.00;
> - If Plaintiff, [Michael Muller], is replaced as named representative in this Action, Plaintiffs' counsel stipulates and affirms and covenants that any and all potential class representatives for this Action must similarly stipulate and affirm the above limitation of recovery;
> - Plaintiff and counsel intend for this Stipulation to continue to apply to, and bind, any other class members bringing any claim in this specific Action.

2

On June 24, 2022, Defendant GSK timely removed the matter to federal court, invoking this Court's diversity jurisdiction under the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d).

## Legal Standard

"The district courts of the United States ... are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotations omitted). A state court action may be removed to federal court if the case falls within the original jurisdiction of the district courts. 28 U.S.C. § 1441(a). CAFA gives federal district courts original jurisdiction over class action cases in which "the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81, 84–85 (2014) (citing 28 U.S.C. §§ 1332(d)(2), (5)(B)). "To determine whether the matter in controversy exceeds the sum or value of $5,000,000," the "claims of the individual class members shall be aggregated." § 1332(d)(6).

"[A] party seeking to remove under CAFA must establish the amount in controversy by a preponderance of the evidence…" *Bell v. Hershey Co*., 557 F.3d 953, 958 (8th Cir. 2009). When a defendant "seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not

3

contested by the plaintiff or questioned by the court." *Dart Cherokee*, 574 U.S. at 87. But, if a plaintiff contests a defendant's asserted amount in controversy, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88. When determining the amount in controversy, the question "'is not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are.'" *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002).

Federal courts ordinarily "resolve all doubts about federal jurisdiction in favor of remand" and strictly construe removal statutes. *Dahl v. R.J. Reynolds Tobacco Co., 478 F.3d 965, 968* (8th Cir. 2007), quoting *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London,* 119 F.3d 619, 625 (8th Cir. 1997). It is here noted that "no antiremoval presumption attends cases invoking CAFA," because the purpose of the statute was to expand federal jurisdiction for certain class actions. *Dart Cherokee*, 574 U.S. at 89 (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013); S. Rep. No. 109–14, at 43 (2005) (CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.")).

## Discussion

Plaintiff filed the instant motion to remand the case back to state court,

4

arguing that the minimum amount in controversy does not exceed the jurisdictional threshold of $5,000,000 necessary to establish jurisdiction under CAFA.[1]

Plaintiff's Precertification Stipulation

First, Plaintiff argues that his stipulation of damages in his Petition that disclaims any recovery exceeding $5 million on behalf of Plaintiff and the "purported class" prevents removal pursuant to CAFA, incorrectly relying on *Rolwing v. Nestle Holdings*, Inc., 666 F.3d 1069, 1072 (8th Cir. 2012) (holding that a damages stipulation could preclude removal under CAFA). The Supreme Court's decision in *Standard Fire,* abrogating *Rolwing*, held that a precertification damages stipulation "can tie [a plaintiff's own] hands, but it does not resolve the amount-in-controversy question" for purposes of determining whether CAFA jurisdiction exists. *Standard Fire,* 568 U.S. at 596. Plaintiff contends that his stipulation addresses the concerns in *Standard Fire* regarding a precertification stipulation for damages because his counsel, who singularly chooses the individual to present to the Court as a putative class representative, stipulates, as a condition of bringing and presenting this action, that any such representative must also stipulate to limit recoverable damages.

---

[1] Plaintiff does not dispute minimal diversity or that the putative class includes at least 100 members, nor does he seek to invoke any exception to CAFA jurisdiction.

5

Plaintiff's argument to overcome *Standard Fire* and its progeny by this type of precertification stipulation has been rejected by at least four courts in this district. *See, e.g., Diesel v. Proctor & Gamble Co.,* 4:22CV892 MTS, 2022 WL 16948290, at *2 (E.D. Mo. Nov. 15, 2022) (rejecting an identical stipulation and noting legally irrelevant if Plaintiff is replaced as class representative); *Dedloff v. Target Corp.*, 4:22CV868-JAR, at *3 (E.D. Mo. Oct. 6, 2022) (rejecting an identical stipulation); *Muller v. Blue Diamond Growers*, No. 4:22 CV 707 RWS, 2022 WL 4119947, at *2 (E.D. Mo. Sept. 9, 2022); and, *Fischer v. Vital Pharms., Inc., No.* 4:22-CV-136 MTS, 2022 WL 1185153, at *1 (E.D. Mo. Apr. 21, 2022). "The effect of the stipulation is the same, regardless of whether it is [Plaintiff] himself or his counsel – speaking on behalf of any future class representative – promising to limit recovery for the entire class. It is still an effort to 'legally bind members of the proposed class before the class is certified,' in direct contravention of Supreme Court precedent." *Muller*, 2022 WL 4119947, at *2 (citing *Standard Fire*, 568 U.S. at 593). This Court agrees. CAFA jurisdiction is not defeated by Plaintiff's precertification stipulation of damages because he "cannot legally bind members of the proposed class before the class is certified." *Standard Fire*, 568 U.S. at 593.

6

Amount in Controversy Requirement

Next, Plaintiff argues that Defendant GSK has not demonstrated, with specific facts or evidence, that there is at least $5 million is in controversy to meet its burden for removal purposes.

Defendant GSK's "burden of describing how the controversy exceeds $5 million constitutes a pleading requirement, not a demand for proof." *Hartis v. Chicago Title Ins. Co.,* 694 F.3d 935, 944-45 (8th Cir. 2012) (internal quotation omitted). The Eighth Circuit has specifically rejected the need for the defendant to provide a "formula or methodology for calculating the potential damages." *Raskas v. Johnson & Johnson*, 719 F.3d 884, 888 (8th Cir. 2013), quoting *Hartis*, 694 F.3d at 945. The removing party "may introduce affidavits, declarations, or other documentation to satisfy the preponderance of the evidence standard." *Faltermeier,* 2016 WL 10879705, at *2, *aff'd*, 899 F.3d 617 (8th Cir. 2018), quoting *Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 755 (11th Cir. 2010) (cited with approval in *Raskas*, 719 F.3d at 888).

In its Removal Notice, Defendant GSK attached a declaration of Jennifer Yomoah, who is a Brand Director for its Cough Cold and Flu Portfolio, including for the "Non-Drowsy" Robitussin products at issue here. Yomoah's declaration states, under the penalty of perjury, that using her access to point-of-sale data reported to Defendant GSK through IRI Worldwide's services, she can estimate

7

sales in Missouri for the "Non-Drowsy" Robitussin products by multiplying the national sales figures by Missouri's estimated percentage of the national percentage. Using the 2021 Census data, Yomoah calculated that 1.86% of the United States population lives in the State of Missouri. Yomoah determined that "1.86% of the national sales of Non-Drowsy Products indicates that Missouri sales *significantly exceeded $10 million* for the five-year period preceding the filing of the Complaint in this action (i.e., May 1, 2017 – May 1, 2022" (emphasis added). The evidence before the Court demonstrates "Non-Drowsy" Robitussin sales in Missouri during the period at issue are approximately two times greater than the $5,000,000 jurisdictional threshold. Yomoah's sworn declaration is sufficient evidence to determine the amount in controversy. *See, e.g., Raskas*, 719 F.3d at 888–89 (finding affidavits of total sales figures sufficient evidence to establish CAFA's amount in controversy); *Dammann v. Progressive Direct Ins. Co.*, 856 F.3d 580, 584 (8th Cir. 2017) (concluding evidence of the challenged product's sales, which included sales of parties not part of the narrowly defined class, sufficient to prove CAFA's amount in controversy); *Fischer,* 2022 WL 1185153, at *2 (E.D. Mo. Apr. 21, 2022) (considering declaration of sales to exceed CAFA's $5,000,000 threshold); *Ahmad v. Panera Bread Co.*, 2021 WL 5447000, at *3 (E.D. Mo. Nov. 16, 2021) (same).

Further, Plaintiff seeks an award of attorney's fees. The MMPA states that a court may "award to the prevailing party attorney's fees, based on the amount of time reasonably expended." Mo. Rev. Stat. § 407.025.1. When considering the total estimated sales together with Plaintiff's request for attorney's fees, the Court finds Defendant GSK has carried its burden to show that CAFA's amount in controversy is met. *See e.g., Faltermeier*, 899 F.3d at 621–22 (concluding it is "more likely than not that attorneys' fees" would be large "considering the expected length of the litigation, the risk and complexity involved in prosecuting class actions, and the hourly rates charged.").

"After the party seeking to remove has shown CAFA's jurisdictional minimum by a preponderance of the evidence, 'remand is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount.'" *Dammann,* 856 F.3d at 584 (8th Cir. 2017), quoting *Bell*, 557 F.3d at 956. "Even if it is highly improbable that Plaintiffs will recover the amounts Defendants have put into controversy, this does not meet the legally impossible standard." *Raskas*, 719 F.3d at 888. Plaintiff attempts to meet this burden by his proposed recovery, set forth in his Petition, that would be "a percentage of the price paid for the Product." Plaintiff makes no attempt to identify the actual percentage he will seek to recover, but asserts that hypothetically, the percentage could be ten percent or lower. However, Plaintiff ignores his allegations in his

9

Petition where he seeks to recover a full refund, seeking disgorgement for "all profits, benefits, and other compensation obtained by Defendant through this inequitable conduct." Plaintiff fails to show that it is legally impossible for his and the putative class to recover more than $5,000,000.

## Conclusion

Defendant GSK showed by a "preponderance of the evidence" that the amount in controversy is met, and that Plaintiff did not establish to a "legal certainty" that the claim is for less than the requisite amount. *Dammann*, 856 F.3d at 583; *Bell,* 557 F.3d at 956. Therefore, this Court has subject matter jurisdiction under 28 U.S.C. § 1332(d), and Plaintiff's Motion to Remand will be denied.

Accordingly,

**IT IS HEREBY ORDERED** Plaintiff's Motion to Remand Case to State Court [Doc. No. 14] is **DENIED.**

Dated this 15th day of December, 2022.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE